# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| CARALEE R. AKKERHUIS, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MICHAEL ASTRUE, ) <br> Commissioner of Social Security ) <br> ) <br> Defendant. ) <br> ) | Case No. 6:11-cv-03051-NKL |

**ORDER**

Before the Court is Plaintiff Caralee Akkerhuis' Social Security Complaint [Doc. # 4]. For the following reasons, the Court reverses and remands the decision of the Administrative Law Judge ("ALJ").

**I.     Background.**[1]

This case involves a claim for Disability Insurance benefits under Title II of the Social Security Act., 42 U.S.C., §§ 410 *et seq.*; 42 U.S.C. §§ 1382, *et seq*. Plaintiff Akkerhuis contests the Defendant's finding that she was not disabled prior to November 13, 2008. The ALJ found that Plaintiff was disabled starting November 13, 2008.

**A.     Medical Evidence**

Plaintiff alleges that she became disabled on April 4, 2007, at age 47. She alleges disability due to depression, post-traumatic stress disorder, mood disorder, hypertension and arthritis.

---

[1] The facts and arguments presented in the parties' briefs are duplicated here only to the extent necessary. Portions of the parties' briefs are adopted without quotation designated.

Michael S. Hagaman, M.D., prescribed anti-depression medication for Plaintiff in October 2004, after she reported problems sleeping and crying spells related to her divorce. In March 2005, Dr. Hagaman prescribed antidepressant medication. In July 2005, Plaintiff reported stress and anxiety related to her housing situation and losing custody of her son. From November 2004 through October 2005, Plaintiff sought treatment at Ozark Counseling Services. R. Stephen Austin, M.D., diagnosed depression and anxiety disorder, not otherwise specified, and prescribed medication.

Terry L. Efird, Ph.D., performed a consultative psychological examination of Plaintiff on October 16, 2007. Dr. Efird diagnosed moderate to severe major depressive disorder and chronic PTSD, noting that Plaintiff reported past diagnoses of depression and PTSD, and her medical records indicated anxiety and mood disorder diagnoses. Dr. Efird noted that Plaintiff was cooperative, her mood was sad and anxious, and she had an appropriate, though tearful, affect. He found her speech, thought process, and thought content to be normal, and she had no visual and auditory hallucinations, but reported that she sometimes heard voices at night. Dr. Efird found no problems with Plaintiff's memory and noted that Plaintiff's belief that she was hearing voices was not "clearly psychotic" and could be related to her mood disorder and environment.

A non-examining State agency consultant, Paul Cherry, Ph.D., reviewed Dr. Efird's report and the other available medical evidence on October 17, 2007, and found that Plaintiff was moderately restricted in her ability to understand, remember, and carry out detailed instructions. Dr. Cherry also found Plaintiff was moderately limited in the abilities to interact appropriately with the general public, respond appropriately to changes in the work setting,

complete a normal work day and work week without interruptions from psychologically based symptoms, and perform at a consistent pace without unreasonable rest periods. He opined that Plaintiff would be capable of performing simple and routine work activities.

Psychologist Vann A. Smith, Ph.D., performed a consultative neuropsychological examination of Plaintiff on January 16, 2008, at the request of Plaintiff's counsel. He found that the test findings were consistent with the presence of diffuse organic brain dysfunction. Dr. Smith stated that Plaintiff's pattern of findings was similar to that seen in those suffering from various encephalopathies, the residua of head trauma, or the dysregulation of central neurochemistry caused by chronic pain. His diagnosis was cognitive dysfunction, non-psychotic, secondary to general medical conditions. Dr. Smith opined that Plaintiff's symptoms, including impaired memory, attention, depression, and sleep disturbance, interfered significantly with her capacity to carry out routine daily activities in a consistent manner and rendered her disabled.

Dr. Smith completed a mental RFC questionnaire form on January 28, 2008, indicating that Plaintiff had a global assessment of functioning (GAF) score of 40 and her prognosis was fair. He opined that Plaintiff was "unable to meet competitive standards" with regard to her abilities to remember work-like procedures, maintain attention for two hour segments, maintain regular attendance, be punctual, sustain an ordinary routine, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without unreasonable breaks, understand, remember, and carry out detailed instructions, set realistic goals or make plans independently of others, and deal with the stress of semi-skilled and skilled work. Dr. Smith noted that Plaintiff was seriously limited, but not precluded" from

3

carrying out very short and simple instructions, working in coordination with or proximity to others without being unduly distracted, accepting instructions and responding appropriately to supervisors, getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, responding appropriately to changes in a routine work setting, dealing with normal work stress, being aware of normal hazards, and taking appropriate precautions. He found Plaintiff had satisfactory abilities to understand and remember very short and simple instructions, make simple work-related decisions, ask simple questions or request assistance, interact appropriately with the general public, maintain socially appropriate behavior, and adhere to basic standards of neatness and cleanliness. Dr. Smith also opined that Plaintiff would be absent from work more than four days per month.

From November 13, 2008, to December 9, 2008, Plaintiff received inpatient mental health treatment at the Arkansas State Hospital for delusions. She had been off medications since March 2008. She was treated with psychiatric medication and participated in psychotherapy. At both admission and discharge, her diagnosis was a mood disorder, not otherwise specified, and her prognosis was "guarded due to poor coping skills and limited understanding of her illness and need for treatment."

### B.     Administrative Hearing

Plaintiff's administrative hearing was held on March 25, 2009, in Harrison, Arkansas. Plaintiff testified at the hearing that she stopped working after sustaining an injury in a motor vehicle accident in April 2007. [Tr. 12]. She testified that she could not work due to concentration problems, panic attacks, anxiety, and an inability to stand, and said she often lost control of her emotions due to "intermittent explosive behavior." [Tr. 13]. Plaintiff testified that

4

her ex-husband was abusive and hit her in the head, rendering her unconscious several times. [Tr. 13]. She stated that her knees "pop out," and swell. [Tr. 14]. She testified that she had continuous moderate to severe pain in her right knee, intermittent mild pain in her left knee, occasional pain in her shoulders, and back pain and headaches every four to five days. [Tr. 15-16]. She testified that she had "schizophrenic episodes" every other day where she was scared, did not know where she was, and got "really loud." [Tr. 17]. She testified that medication helped prevent these episodes. [Tr.17]. Plaintiff stated that she typically spent most of the day in bed reading, but usually could not remember it afterwards. [Tr. 17-18]. She testified that she did not have a television because it caused her to "hear things" when it was off. [Tr. 18-19]. She tried not to leave the house due to her "episodes" and testified that she did not like to be around others because they made her nervous. [Tr. 19, 21-22]. She testified that she did not often have episodes while she was alone at home, but when she did, they were more severe. [Tr. 19]. Plaintiff stated that she was easily distracted, could not remember anything without writing it down, and could not fill out a medication form because she could not understand it. [Tr. 19-20, 23]. She testified that she had trouble sleeping and bipolar "highs" about once a week, but was "real low" most of the time. [Tr. 20-21].

Through written interrogatories, the ALJ posed a hypothetical question to the vocational expert that included an individual of Plaintiff's age, education, work history, and RFC. [Tr. 24-25,174]. In response, the vocational expert stated that such an individual could perform work existing in significant numbers in the national economy, including sedentary and light exertional work as a production worker, machine tender, and escort vehicle driver. [Tr. 174-75].

C.   **The ALJ's Decision**

5

The ALJ found that Plaintiff had severe impairments of degenerative disk disease, degenerative joint disease, depression, and anxiety. [Tr. 39]. However, the ALJ found that Plaintiff did not have an impairment or combination of impairments listed in or medically equal to one contained in 20 C.F.R.Part 404, Subpart P, Appendix 1, Listing of Impairments. [Tr. 39-41]. The ALJ found that Plaintiff's subjective allegations of disabling symptoms and limitations were not fully supported by the evidence of record. [Tr. 41-43]. The ALJ found that, prior to November 13, 2008, Plaintiff retained the RFC to perform light work but could only stand and walk for two hours and sit for six hours; would be moderately limited in understanding, remembering, and carrying out detailed instructions, responding appropriately to usual work situations and routine work changes, and interacting appropriately with the public; was capable of work with incidental interpersonal contact and in which the complexity of tasks is learned and performed by rote with few variables and little judgment required; and would require simple, direct, and concrete supervision. [Tr. 41]. The ALJ defined "moderately limited" as "more than a slight limitation, but a person can still perform in a satisfactory manner." [Tr. 41]. Based on vocational expert testimony, the ALJ found that Plaintiff was able to perform other jobs existing in significant numbers in the national economy prior to November 13, 2008, and, therefore, was not disabled before that date. [Tr. 44-45].

## II. Discussion

### A. Standard of Review

In reviewing the Commissioner's denial of benefits, the Court considers whether the ALJ's decision is supported by substantial evidence on the record as a whole. *See Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008). "Substantial evidence is evidence that a reasonable

mind would find adequate to support the ALJ's conclusion." *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007) (citation omitted). The Court will uphold the denial of benefits so long as the ALJ's decision falls within the available "zone of choice." *See Casey v. Astrue*, 503 F.3d 687, 691 (8th Cir. 2007). "An ALJ's decision is not outside the 'zone of choice' simply because [the Court] might have reached a different conclusion had [it] been the initial finder of fact." *Id.* (quoting *Nicola*, 480 F.3d at 886).

> **B.     Whether the ALJ Properly Weighed the Medical Opinions**

Plaintiff argues that the ALJ failed to properly weigh the opinion of examining psychologist Vann A. Smith, Ph.D. The ALJ is required to evaluate all the medical opinions, generally placing greater weight on the opinions of examining sources than those who have not examined the claimant. 20 CFR § 404.1527 (d). The record contains two opinions from examining psychologists, Dr. Smith and Dr. Efird, and one opinion from non-examining state agency consultant Dr. Cherry. However, in his decision, the ALJ references only the opinions of Drs. Efird and Cherry, without mention of Dr. Smith's consultative neuropsychological examination and diagnosis of Plaintiff. The ALJ points specifically to Dr. Cherry's findings of moderate limitations in, among other areas, the ability to understand and carry out detailed instructions, the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms, and the ability to perform at a consistent pace without unreasonable rest periods. The ALJ then assigned "great weight' to Dr. Cherry's opinion, incorporating these findings into the RFC, and thus concluding that Plaintiff suffered moderate limitations in such areas as the ability to carry out detailed instructions and maintain concentration, persistence and pace. [Tr. 40-43]. The ALJ also adopted the findings of Dr.

7

Cherry that Plaintiff retained the ability to perform simple and routine work activities, concluding that Plaintiff was capable of performing work in which "the complexity of tasks is learned and performed by rote with few variables and little judgment required," and in which the supervision required is "simple, direct, and concrete." [Tr. 41].

The Commissioner argues that the ALJ implicitly took into account Dr. Smith's opinions when formulating the RFC, and that Dr. Smith's findings are consistent with the ALJ's findings. However, a review of the record indicates that Dr. Smith's findings are often directly contradictory to those of the ALJ. For example, while the ALJ found that Plaintiff had moderate limitations in concentration, persistence and pace, as well as understanding, remembering and carrying out detailed instructions, Dr. Smith found that Plaintiff was unable to meet competitive standards in these areas. For example, Dr. Smith found that Plaintiff was unable to satisfactorily maintain attention for two-hour segments, sustain an ordinary routine without supervision, complete a normal workday without interruption from psychologically based symptoms, or perform at a consistent pace without unreasonable rest periods.[2] As the ALJ defined "moderately limited" as "more than a slight limitation, but a person can still perform in a satisfactory manner," the ALJ's findings of moderate limitations in these areas cannot reasonably be seen to incorporate Dr. Smith's opinion, which detailed much more severe restrictions in Plaintiff's functioning.

The ALJ's findings also appear inconsistent with those of Dr. Smith regarding Plaintiff's capacity to complete simple tasks, a requirement for Plaintiff to be able to perform the jobs listed

---

[2] Dr. Smith's evaluation defined "unable to meet competitive standards" as being unable to satisfactorily perform an activity independently, appropriately, effectively and on a sustained basis in a regular work setting.

8

in Step V of the analysis. The ALJ states that Plaintiff was capable of doing rote activities requiring little judgment and "simple, direct and concrete" supervision. [Tr. 41]. This finding is consistent with Dr. Cherry's finding that Plaintiff could complete simple, routine tasks. However, the ALJ makes no mention of Dr. Smith's finding that Plaintiff was "seriously limited but not precluded" in following simple instructions, meaning that her performance was "less than satisfactory" and accompanied by "substantial loss of ability to perform the work-related activity." [Tr. 325]. This finding calls into question the ALJ's conclusion that Plaintiff was competent to perform simple tasks, and the ALJ's failure to assess the weight of this evidence is grounds for remand.

Dr. Smith also made findings in areas which were left wholly unaddressed by the ALJ when determining the RFC. For example, Dr. Smith found that Plaintiff could not meet competitive standards in maintaining regular attendance, opining that Plaintiff would miss work more than 4 days a month. However, the ALJ made no reference to these attendance limitations in the RFC, nor did he explain why this evidence was discounted. Dr. Smith also found serious limitations in Plaintiff's ability to deal with normal work stress, be aware of normal hazards and take appropriate precautions, areas also left unaddressed in the RFC. [Tr. 325].

As detailed above, the ALJ failed to examine properly the findings of examining psychologist Dr. Smith, even though they often conflict with those of Dr. Cherry, a non examining psychologist. In failing to explain why Dr. Smith's findings were discounted, the ALJ committed reversible error and the case must thus be remanded for reconsideration consistent with this opinion.

9

Plaintiff also argues that the ALJ improperly found the opinions of Drs. Efird and Cherry to be consistent with each other. However, Plaintiff has provided no evidence of how the opinions conflict. Plaintiff does point to Dr. Efird's statements that Plaintiff's symptoms caused her significant distress and impaired social functioning, as well as his finding that Plaintiff's GAF was 42-52. However, Dr. Efird also noted that Plaintiff was able to perform most activities of daily living satisfactorily [Tr. 282]. The findings of Dr. Cherry can reasonably be seen to incorporate all of these findings of Dr. Efird, as Dr. Cherry acknowledged that Plaintiff suffered moderate limitations in interacting appropriately with the general public, completing a normal workday without interference from psychologically based symptoms and performing at a consistent pace. Dr. Cherry's finding that Plaintiff can perform only simple work activities, as opposed to more difficult tasks, can reasonably be seen as consistent with Dr. Efird's findings of distress and impaired social functioning.

### C. Whether the ALJ Erred in Assessing Plaintiff's Credibility

An ALJ must give full consideration to all the evidence related to a claimant's subjective complaints concerning their disability, including the objective medical record, the claimant's daily activities, and the dosage, effectiveness and side effects of medications, any functional restrictions, and duration, frequency and intensity of the pain. *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984). Given the improper treatment of the medical record discussed above, the ALJ must redo its credibility determination of Plaintiff's subjective complaints using the *Polaski* criteria laid out by the Eighth Circuit.

### D. Whether the ALJ Properly Determined the Severity of Plaintiff's Impairments

Plaintiff also argues that the ALJ erred in failing to find that Plaintiff's PTSD constituted a severe impairment. Plaintiff's impairment will be considered non-severe when it has no more than a minimal effect on the claimant's ability to work. *Nguyen v. Chater*, 75 F.3d 429, 431 (8th Cir. 1996). The ALJ's finding that Plaintiff's PTSD is a non-severe impairment is supported by substantial evidence. The ALJ was within his authority to discount the diagnosis of PTSD by Dr. Efird because the diagnosis appeared to be based on Plaintiff's self-reported symptoms and history of PTSD diagnosis rather than an independent medical evaluation. As there is no independent diagnosis of PTSD within the medical record, the ALJ reasonably concluded that the entire medical record did not establish that Plaintiff's impairment of PTSD had more than a minimal effect on her ability to work. Since Dr. Smith's evaluation does not specifically address Plaintiff's PTSD, the ALJ's improper treatment of the evaluation constituted harmless error for the purposes of the Step Two PTSD analysis.

### E. Whether the ALJ Erred at Step Five in Finding Plaintiff Capable of Performing Other Work Prior to November 13, 2008

The Eighth Circuit has ruled that vocational testimony elicited by hypothetical questions that "fail to relate with precision the physical and mental impairments of the claimant cannot constitute substantial evidence." *Bradley v. Bowen*, 800 F.2d 760, 763 (8th Cir. 1986). Thus, for the reasons discussed above, any hypothetical presented to the VE based on the current RFC is legal error and must be reversed. The Court thus directs the ALJ to reevaluate Plaintiff's impairments based on the entire record above.

### III. Conclusion

It is hereby ORDERED that the matter be REMANDED to the ALJ for reconsideration consistent with this order.

s/ Nanette K. Laughrey  
NANETTE K. LAUGHREY  
United States District Judge

Dated: October 3, 2011  
Jefferson City, Missouri